UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEUNESSE GLOBAL HOLDINGS, LLC,

      Plaintiff,

v.                                  Case No: 6:17-cv-1061-Orl-41TBS

VIVANTE,  INC. and VITALIY
POTSELUEV,

      Defendants.

_____

**REPORT AND RECOMMENDATION**

      Pending before the Court is Plaintiff's Renewed Motion for Default Judgment (Doc. 38). Upon due consideration, I respectfully recommend that the motion be **granted,** as set forth below.

## Background

      On June 9, 2017, Plaintiff Jeunesse Global Holdings, LLC filed its complaint against Defendants Vivante, Inc., Vitaliy Potseluev (the named Defendants), and Does 1-10, alleging claims for trademark infringement, false designation of origin and unfair competition, dilution, and trade dress infringement, all under the Lanham Act (15 U.S.C. § 1051 *et seq*.), and copyright infringement under 17 U .S.C. § 501(a) (Doc. 1). The complaint was served on the named Defendants and no answer or other response was timely filed. The Clerk entered default against the named Defendants on October 5 and 6, 2017 (Docs. 19, 22) and Plaintiff moved for entry of default judgment (Doc. 24). The motion was denied without prejudice, due to insufficiently pled averments and an inadequate showing as to liability and damages, especially as to the Does (Docs. 25, 26). Plaintiff then voluntarily dismissed the Does (Docs. 27, 28) and successfully moved for

leave to amend the complaint (Docs. 29, 30). Plaintiff filed its amended complaint against Vivante, Inc. and Vitaliy Potseluev (Doc. 31). Following a delay due to an error obtaining service of the amended complaint on Defendants (see Doc. 34), Plaintiff moved for entry of a clerk's default, noting that neither Defendant had appeared or responded to the amended complaint (Id.). The defaults were entered on December 26, 2018 (Docs. 36, 37). The instant motion followed.

Discussion

### Standards of Law

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir.1987). Nonetheless, a court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

The United States Supreme Court has noted the difference between well-pleaded facts and conclusory allegations. In Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the plaintiff is entitled to relief.'" Id. at 679 (quoting FED. R. CIV. P. 8(a)(2)). This analysis is equally applicable to a motion for default judgment. See De Lotta v. Dezenzo's Italian Restaurant, Inc., No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, *5 (M.D. Fla. November 24, 2009).

"Once liability is established, the court turns to the issue of relief." Enpat, Inc. v. Budnic, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011). "Pursuant to Federal Rule of Civil Procedure 54(c),'[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings,' and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." Enpat, 773 F. Supp. 2d at 1313 (citing FED. R. CIV. P. 55(b)(2)). Where all the essential evidence is of record, an evidentiary hearing on damages is not required. SEC v. Smyth, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005).

So, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief.

The Allegations of the Amended Complaint

In its renewed motion, Plaintiff accurately summarizes its allegations against Defendants Vivante, Inc. and Vitaliy Potseluev. Jeunesse alleges that it is a worldwide multi-level marketing business that distributes products which use innovative stem-cell technology (Doc. 31, ¶ 14). One of the main components of Jeunesse's business encompasses the production, sale, and distribution of its successful JEUNESSE

- 3 -

products, including LUMINESCE cellular rejuvenation serum (Id., ¶ 15). Jeunesse has federal trademark and copyright registrations for JEUNESSE products, including its LUMINESCE cellular rejuvenation serum (Id., ¶¶ 20-22). The success of the JEUNESSE product line and Jeunesse's LUMINESCE cellular rejuvenation serum is due in part to Jeunesse's marketing and promotional efforts (Id., ¶ 16). These efforts include advertising and promotion through Jeunesse's websites, distributors, print and other internet-based advertising, and in-person, online, and televised promotional appearances by its trainers (Id.). Jeunesse has spent substantial time, money, and effort in building up and developing consumer recognition, awareness, and goodwill in its JEUNESSE product line and marks and its LUMINESCE cellular rejuvenation serum product and marks (Id.). As a result, consumers, purchasers, and the members of the public have become familiar with the JEUNESSE product line, Jeunesse's LUMINESCE cellular rejuvenation serum, and other products, and have come to recognize the JEUNESSE and LUMINESCE marks and products and associate them exclusively with Jeunesse (Id., ¶ 18).

Jeunesse has never authorized or consented to Defendants' use of the JEUNESSE and/or LUMINESCE marks or any confusingly similar marks, nor has Jeunesse authorized Defendants to manufacture, copy, offer for sale, sell, or distribute any JEUNESSE products, including its LUMINESCE cellular rejuvenation serum (Id., ¶ 23).

Defendants, acting jointly, have sold and are currently selling counterfeit JEUNESSE products, including but not limited to Jeunesse's LUMINESCE cellular rejuvenation serum (Id., ¶ 24). Defendants, acting jointly, offer for sale and sell counterfeit JEUNESSE products to consumers through Amazon.com ("Amazon") under user storefront "Oshop," and they use in advertising Jeunesse's JEUNESSE and LUMINESCE

marks and copyright (Id., ¶ 25). Defendants, acting jointly, have also distributed and received payment for counterfeit LUMINESCE cellular rejuvenation serum sold to consumers through Amazon (Id., ¶¶ 26-27).

On April 12, 2017, Jeunesse arranged the purchase of a purported 15 ml bottle of "Jeunesse LUMINESCE cellular rejuvenation serum" being offered for sale by Defendants on Amazon under user storefront "Oshop" for a cost of $40.75 (Id., ¶ 28). The LUMINESCE cellular rejuvenation serum was purchased and received from user storefront "Oshop," with Defendants' address–131 Coolidge Ave. 426, Watertown, Massachusetts 02472– on the shipping label return address (Id., ¶ 29). The LUMINESCE cellular rejuvenation serum was inspected to determine authenticity, resulting in a finding that the item offered for sale, sold, and/or distributed by Defendants was in fact, counterfeit LUMINESCE cellular rejuvenation serum (Id.). According to business records received from Amazon, from January 3, 2016, through July 10, 2017, Defendants' sales of counterfeit JEUNESSE products through their Amazon account totaled $24,077.91 (Id., ¶ 31 and Exhibit C to the amended complaint).

Although the amended complaint seeks a variety of relief, including injunctive relief, money damages, statutory damages, punitive and treble damages, and attorney's fees and costs, the motion seeks only entry of a default judgment against Defendants, Vivante, Inc.,and Vitaliy Potseluev, "as to liability and damages on Counts I-V in the Amended Complaint in the amount of $24,077.91, or alternatively, for $150,000.00 in statutory damages or an amount the Court finds to be appropriate and just." (Doc. 38 at 12).

Liability

Due to the default, the well-pled allegations summarized above are taken as true.

On review, I find these admissions are sufficient to establish liability for the wrongs alleged in the amended complaint.

Count I is a claim for trademark infringement pursuant to 15 U.S.C. § 1114. The Lanham Act prohibits the unauthorized use of a registered trademark in connection with "the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a). Trademarks are protected by federal law against infringement by use of identical (counterfeit) or colorable imitations of the mark which are "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Thus, under the Lanham Act, "a defendant is liable for trademark infringement if, without consent, he uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' that 'is likely to cause confusion, or to cause mistake, or to deceive.'" Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc., 830 F.3d 1242, 1255 (11th Cir. 2016).

To establish a claim of trademark infringement, Plaintiff must show that: (1) it possesses a valid mark; (2) that Defendant used the mark; (3) that Defendant's use of the mark occurred in commerce; (4) that Defendant used the mark in connection with the sale or advertising of any goods or services; and (5) that Defendant used the mark in a manner likely to confuse consumers. See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1218 (11th Cir. 2008). The Eleventh Circuit has developed a seven-factor test for determining whether there is a likelihood of confusion: (1) the strength of the plaintiffs mark; (2) the similarity between the plaintiffs mark and the infringing mark; (3) the similarity between the products or services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of the advertising methods; (6) the defendant's intent; and (7) whether actual confusion has occurred. Alliance Metals, Inc. of Atlanta v. Hinely Industries, Inc., 222 F.3d 895 (11th Cir. 2000).

Consideration of these factors in view of the uncontested factual allegations, which the Court accepts as admitted due to the defaults, leads to the conclusion that Defendants violated the Lanham Act in their use of identical or colorable imitations of Plaintiff's marks. Accordingly, I find Plaintiff has established that Defendants are liable for their unauthorized use and infringement of the marks.

Count II asserts a claim for copyright infringement pursuant to 17 U.S.C. § 501(a). "To establish a claim of copyright infringement, [a plaintiff] must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1541 (11th Cir. 1996) (internal quotations omitted). Here, the requirements are met. The copying was so extensive that the original and allegedly infringing work are substantially similar, if not virtually identical. See Indyne, Inc. v. Abacus Tech. Corp., 876 F. Supp. 2d 1278, 1284 (M.D. Fla. 2012), aff'd, 513 F. App'x 858 (11th Cir. 2013) ("InDyne must show that it is able to prove evidence sufficient for a jury to return a verdict in its favor as to whether the copying was so extensive that the offending and copyrighted works are substantially similar") (internal citation omitted).

Count III is a claim for false designation of origin and unfair competition pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) prohibits a "false designation of origin," which has been construed as creating a federal action for "passing off." Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1248 (11th Cir. 2007) (citing Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n.1 (2003)). "A passing off claim requires a showing that the defendant falsely represented that the plaintiff was the "source" of the goods when it was not, that is, that it falsely suggested that the plaintiff was 'the producer of the tangible product sold in the marketplace.'" (Id.). The uncontested allegations and the supporting exhibits attached to

- 7 -

the operative complaint show that Defendants, acting jointly, advertised and sold counterfeit Jeunesse LUMINESCE cellular rejuvenation serum on Amazon, bearing the JEUNESSE and LUMINESCE marks and in violation of Jeunesse's rights. Liability for this count is established.

Count IV is a claim for dilution pursuant to 15 U.S.C. § 1125(c). As Judge Covington has explained:

> Dilution may occur by tarnishment or by blurring. 15 U.S.C. § 1125(c)(1). "'Dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark.'" 15 U.S.C. § 1125(c)(2)(B). "'Dilution by tarnishment is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.'" 15 U.S.C. § 1125(c)(2)(C).
>
> A plaintiff's showing that a defendant used identical trademarks may constitute circumstantial evidence sufficient to support a finding of dilution. See Gen. Motors, 504 F.Supp.2d at 1287 ("[A] plaintiff's showing that the defendant used identical trademarks constitutes circumstantial evidence sufficient to support a finding of actual dilution."); Nike Inc., 274 F.Supp.2d at 1372 ("[T]he Court concludes that [the defendant] has diluted the Nike trademarks due to the identical or virtually identical character of the marks on the Accused Goods to the Nike Trademarks."); Am. Honda Motor Co., Inc. v. Pro-Line Protoform, 325 F.Supp.2d 1081, 1085 (C.D.Cal.2004) ("[W]hen identical marks are used on similar goods, dilution–the capacity of the famous mark to identify and distinguish the goods of the trademark holder–obviously occurs.").

Bentley Motors Corp. v. McEntegart, 976 F. Supp. 2d 1297, 1314 (M.D. Fla. 2013). Because Defendants have used Plaintiff's marks on their own counterfeit serum, dilution has occurred and liability on this count is established.

Count V is a claim for trade dress infringement of "LUMINESCE cellular rejuvenation serum" packaging pursuant to § 43(a) of the Lanham Act. "'Trade dress'

involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." <u>John H. Harland Co. v. Clarke Checks, Inc.</u>, 711 F.2d 966, 980 (11th Cir. 1983). "In order to prevail on a claim for trade dress infringement under § 43(a), plaintiff must prove three basic things: 'That the trade dress of the two products is confusingly similar, that the features of the trade dress are primarily non-functional, and that the trade dress has acquired secondary meaning.'" <u>John H. Harland Co. v. Clarke Checks, Inc.</u>, 711 F.2d 966, 980 (11th Cir. 1983). As shown by the allegations, including the graphics of the original and the counterfeit product, Plaintiff has established a claim for trade dress infringement against Defendants.

<u>Damages</u>

Although the applicable statutes provide for a variety of relief for the infringements found here, Plaintiff seeks only actual damages of Defendant's profits from its sale of counterfeit Jeunesse products.[1] It has alleged that Defendants profited $24,077.91 from their use of Jeunesse's distinctive and famous marks and has provided what it represents to be business records from Amazon supporting that calculation (Doc. 31, ¶ 31, and exhibits attached to amended complaint). Absent any evidence or argument to the contrary, I find Jeunesse is entitled to a default judgment in the amount of $24,077.91.

Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

---

[1] A copyright owner may elect to recover statutory damages in lieu of actual damages. 17 U.S.C. § 504(a) and (c). Statutory damages, awarded at the Court's discretion, may range from $750 to $30,000, as the court would consider to be just. However, if the copyright owner establishes that the infringement was willful, the Court, in its discretion, may increase the award of statutory damages to a sum of not more than $150,000. 17 U.S.C. § 504(c)(1) and (2). Although Plaintiff asks for statutory damages as an alternative, I find Plaintiff has made the election to pursue actual damages. <u>See</u> 17 U.S.C. § 504(c)(1).

(1) The motion for default judgment be **GRANTED**; and

(2) Default Final Judgment be entered in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $24,077.91, plus the costs of this action.

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on January 23, 2019.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record
Any Unrepresented Parties